IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICK CECIL, JR., )
        Plaintiff, )
         )
        v. )    2:13-CV-1765
         )
         )
COMMISSIONER OF SOCIAL )
SECURITY, )
        Defendant. )

MEMORANDUM and ORDER

Mitchell, M.J.:

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion (ECF 12) will be denied, the defendant's motion (ECF 14) will be granted and the decision of the Commissioner will be affirmed.

On December 11, 2013, Nick Cecil, Jr. by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On January 7, 2011, the plaintiff filed an application for disability benefits alleging that he had been disabled since January 6, 2010 (R.157-165), and benefits were denied on April 13, 2011 (R. 101-118). On June 2, 2011, the plaintiff requested a hearing (R.119) and pursuant to that request a hearing was held on May 25, 2012 (R.27-100). In a decision dated June 12, 2012, benefits were denied (R.9-21), and on August 9, 2012, reconsideration was requested (R.7).

Upon reconsideration and in a decision dated October 18, 2013, the Appeals Council affirmed the prior determination (R.1-5). On December 11, 2013, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

At the hearing held on May 25, 2012 (R. 27-100), the plaintiff appeared with counsel and testified that he was born on August 30, 1976 (R.37); that he completed high school and received masonry training (R.39,40); that he received public assistance (R.40); that he last worked on January 6, 2010 the day he was in a car accident (R.41) and that he worked as a horse hauler, concrete truck driver and steel mill melter (R.46)

The plaintiff also testified that he has a rod in his leg (R.49); that his right leg is shorter and as a result he is off balance and experiences pain (R.50); that he also experiences back and neck pain (R.51,60,65,66); that he becomes shaky from his medication (R.53,77); that since his

accident he experiences seizures which are medically controlled as well as panic attacks, anxiety and depression (R.55-56, 59, 69); that his medication makes him sleepy (R.63); that he can only walk short distances and uses a cane (R.71,72); that he can stand or sit for about twenty minutes (R.73-74); that he can lift ten to fifteen pounds (R.74-75); that he performs some cooking and laundry chores (R.80,81) that he has difficulty sleeping (R.83) and that he lays down to rests a few times a day (R.87).

At the hearing a vocational expert was called upon to testify (R.89-98). The witness described the plaintiff's prior work as medium to heavy, unskilled to semi-skilled in nature (R.90-91). When asked to consider an individual of the plaintiff's age, education and prior work experience who is capable of light work, the witness testified that such a person could not perform any of the plaintiff's prior jobs (R.91-92). However, he did testify that there were a number of jobs such an individual could perform (R.92) but that these jobs could not be performed using a cane (R.92-93). The witness also testified that such an individual could perform a wide range of sedentary work (R.93-94). If such an individual had to consistently take off more than two days a month or had to be off-task resting more than ten percent of the time, or had severe limitations on his working ability the witness testified he would not be employable (R.95-98).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

3

death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was treated for pain between February 8, 2010 and June 1, 2010 by Dr. Edward K. Heres following his right hip surgery. Medication was prescribed (R.378-385).

The plaintiff was treated at the Washington Hospital emergency room on various occasions between January 7, 2010 and July 22, 2010 for chronic back pain and a seizure. Medication was prescribed (R.386-409).

The plaintiff was treated at the Adult Neurology Center between July 27, 2010 and July 30, 2010 for syncope. His EEG was interpreted as normal (R.410-414).

The plaintiff attended a UPMC pain clinic between February 8, 2010 and December 29, 2010. Medication was prescribed (R.441-462).

In a consultative psychological report dated March 9, 2011, Sandra Vujnovic, Ph.D. indicated that the plaintiff was "functioning fairly well psychologically, receiving some treatment for depressive symptoms possibly in response to marital difficulties and a divorce" which worsened after his motor vehicle accident (T.478-484).

The plaintiff was treated by Dr. Alvaro N. Changco between September 29, 2009 and March 22, 2011 for leg and back pain. Some lumbar disc space narrowing was observed (R.463-477, 490-494).

In a report covering the period from March 11, 2011 through December 22, 2011, Dr. David T. Anthony diagnosed a mood and cognitive disorder. Medication was prescribed (R.485-488, 503-510).

The plaintiff had x-rays and treatment at the Centerville Clinic between December 13, 2011 and January 6, 2012. His right hip fracture was reported to be completely healed (R.511-529).

The plaintiff was treated at the Washington Hospital emergency room between August 15, 2011 and January 9, 2012 for chronic back pain and an accidental medicine overdose (R.549-599).

Pain management injections were administered by Dr. Arif Rafi between March 1, 2012 and March 12, 2012 (R.530-538).

The plaintiff had post-surgical follow-ups performed by Dr. Peter Siska between January 19, 2010 and March 13, 2012. The possibility of a hip replacement was noted. The doctor also reported that it was reasonable that the plaintiff would have trouble standing for more than one hour, sitting for more than two to four hours with appropriate breaks; that his medication would interfere with his concentration; that he could not perform heavy labor and that full time employment would be unrealistic and that if working he would have to miss work two or more days a month (R.415-440, 495-502, 539-548, 600-602).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial

gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

>Based on the evidence presented, the Commissioner concluded:

>The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

>The claimant has not engaged in substantial gainful activity since January 6, 2010, the alleged onset date.

>The claimant has the following severe impairments: status post ORIF of the right hip and MVA; seizure/syncope; degenerative disc disease of the spine; depression; anxiety and bipolar disorder…

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

* **

The claimant testified at the hearing that he was involved in a car accident on January 6, 2010, which required an invasive procedure on his right hip. He alleged that he has no femur and just has a metal pin that has made his right leg shorter that his left which has caused him some gait problems. He also alleged that he has neck and lower back issues. He claimed that he has a history of seizures with his last seizure occurring last summer. He also stated that he suffers from some anxiety and depression.

After carefully consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity…

The claimant suffered a right comminuted peritrochanteric femoral neck fracture and underwent open reduction internal fixation to repair the fracture on January 7, 2010… The claimant was seen by physical therapy for gait training and fitted for a hip-knee arthrosis. The treatment records note that the claimant was able to successfully pivot and transfer on his good leg and began to fully ambulate up out of bed to a chair by postoperative day #4. The claimant was discharged home on January 14, 2010.

The claimant continued treatment … following his hospitalization… On November 30, 2010, x-rays did show that, although healing, there were degenerative changes present and mild osteoarthritis of right hip was found. On April 6, 2010, Dr. Siska permitted the claimant to weight bearing as tolerated and recommended he do physical therapy for gait training. On June 22, 2010, the claimant was recommended to do therapy for strengthening, exercise bike, and weight bearing as tolerated. On October 12, 2010, Dr. Siska noted that the claimant was asymptomatic at that point and found the claimant had no evidence of avascular necrosis on his x-ray. Dr. Siska at that time noted he would see the claimant back in six months for his final check… On November 8, 2011, an x-ray Final Report found the claimant had a completely healed right hip fracture with intact internal fixation. On that same date, Dr. Siska noted that the claimant wanted him to sign his disability form and noted that the claimant "will be on disability for longer than 12 months but not permanent disability." … Dr. Siska noted [on November 29, 2011] the claimant has chronic pain and recommended the claimant see a pain physician… Dr. Siska also noted that he was filling out paperwork to represent that the claimant is permanently totally disabled… The [ALJ] has found that the combination of the claimant's musculoskeletal impairments have caused the claimant to have functional limitations although the

undersigned does not find them to be as severe as alleged. However, the undersigned has accommodated for these impairments in the [noted] residual functional capacity by limiting the claimant to sedentary work.

The claimant … reported to the Washington Hospital on July 22, 2010, after complaining of a seizure … The claimant was diagnosed with syncope with urinary incontinence, but the doctor was not convinced that claimant has true epilepsy…

In addition to the claimant's physical impairments, the claimant has also alleged disability due to depression and anxiety… The undersigned has found the claimant has functional limitations due to his mental impairments and has accommodated for them in the [determined] residual functional capacity by providing the following limitations: the work must be limited to one to two step tasks; the work must be limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions with few, if any, work place changes; and the work must require only occasional supervision.

The claimant's treatment history does not support the claimant's allegations… The claimant's treatment has also been very routine and conservative…the claimant has also not followed up with recommendations made to him…

Further, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations…

The above factors detract from the credibility of the claimant's allegations concerning the severity of his symptoms. The foregoing evidence does indicate the claimant to have abnormalities, which are likely to impose some functional limitations. However, the undersigned concludes that these findings are not indicative of any intractable condition that would preclude the claimant from work activity for 12 consecutive months. The claimant has a treatment history, which fails to demonstrate a condition of the degree of severity which the claimant has alleged. Further, the claimant has activities of daily living which do not support the claimant's complaints of disability. Accordingly, the undersigned finds that the claimant's credibility is, at best, fair.

As for the opinion evidence in regards to the physical impairments, the undersigned considered the opinions of the claimant's treating orthopedic physician, Dr. Siska, who opined that the claimant was disabled on several occasions… The undersigned noted that this is a finding limited solely to the Commissioner. Therefore, the undersigned accorded these specific opinion[s] limited weight; however, the undersigned accorded the undersigned opinions, as to the claimant['s] actual functional limitations, substantial weight.

The undersigned also considered the opinion of the State agency consultant, Juan B. Mari-Mayans, M.D. who prepared the physical residual functional capacity. Dr. Mayans opined that the claimant was capable of light work. The undersigned finds this opinion to be inconsistent with the medical evidence of record and this expert did not consider all of the medical evidence since the opinion was offered on February 16, 2011…

As to the medical opinions in regard to the mental impairments, the undersigned considered the opinion of the State agency consultant, Melissa Diorio, Psy.D., who prepared the psychiatric review technique and mental residual functional capacity. The undersigned found this expert's opinion to be consistent with the medical evidence of record and accorded great weight to this expert's opinion

The undersigned also considered the medical source statement provided by the consultative examiner, Dr. Vujnovic. The undersigned found this opinion to be consistent with the medical evidence of record. This expert also had the opportunity to examine the claimant and access the claimant's allegations firsthand. Therefore, the undersigned accorded this opinion substantial weight.

Therefore, having singularly had the opportunity to review the entire longitudinal record and to hear and observe the claimant's demeanor and sworn testimony at a hearing, the undersigned concludes that the claimant's various impairments have combined since January 6, 2010, to impose only such [limited] functional limitations as have been defined …above.

* * *

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…

The claimant has not been under a disability … from January 6, 2010, through the date of this decision (R.14-21).

The record demonstrates that the plaintiff suffered serious injuries in a motor vehicle accident on January 6, 2010. Subsequently, plaintiff's treating physician reported on October 12, 2010 that the plaintiff was asymptomatic and on November 8, 2011 that the plaintiff was completely healed but also disabled. "Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason'." Morales v. Apfel, 225

F.3d 310, 317 (3d Cir. 2000). In addition, determinations of credibility rest with the Commissioner. <u>Diaz v. Commissioner</u>, 577 F.3d 500, 506 (3d Cir.2009).  In the instant case, while the plaintiff's treating physician opined that he had made a recovery from the accident, he also concluded that he was permanently disabled. This conclusion is rebutted by the other evidence of record, and therefore the action of the Commissioner in rejecting it was proper. Additionally, the psychiatric evidence likewise, does not support a finding of disability.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. <u>Lichtenstein v. UPMC</u>, 691 F.3d 294, 300 (2012).  In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is supported by substantial evidence.  For this reason, the plaintiff's motion for summary judgment will be denied , the defendant's motion for summary judgment will be granted and the determination of the Commissioner will be affirmed.

An appropriate Order will be entered.

ORDER

AND NOW, this 1st day of July, 2014, for the reasons set forth in the foregoing Memorandum, the plaintiff's motion for summary judgment (ECF 12) is DENIED, the defendant's motion for summary judgment (ECF 14) is GRANTED, and the decision of the Commissioner is AFFIRMED.

    s/ Robert C. Mitchell
    United States Magistrate Judge